UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT SEDORE,

     *Plaintiff,*

     *v.*

SIRENA LANDFAIR, BRIAN
STRICKLIN, ADRIA ROACH,
ALINDA FLOREK, MICHIGAN
DEPARTMENT OF CORRECTIONS,
AND JOSHUA CZARENIOWSKI,

     *Defendants.*

_____/

CASE NO. 2:21-cv-12935

HON. F. KAY BEHM
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 37)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that MDOC

Defendants' Motion for Summary Judgment (ECF No. 37) be **GRANTED and the case**

**DISMISSED in its entirety.**

## II. REPORT

### A. Introduction and Procedural History

Plaintiff commenced this action on December 10, 2021 based on a purported

failure to receive timely and adequate medical treatment in response to multiple kites he

filed in July 2021 complaining of severe ear pain and related issues. (ECF No. 1,

1

PageID.21–22, ¶¶ 1–3, 5, 7). Plaintiff submitted multiple kites over a two-week period notating the urgency of his request and the severity of his pain in each submission. (*Id.* at PageID.21, ¶¶ 1–3). He also included statements in the body of his kite regarding the diminishment of the hearing in his right ear, which he represented was related to his ear infection. (*Id.*; *see also id.* at PageID.23, ¶¶ 5, 7). Plaintiff waited almost two weeks before he was seen by a healthcare professional for his medical complaints. (ECF No. 1, PageID.23, ¶ 9; ECF No. 37-3, PageID.737). Plaintiff was not examined by a doctor until early September, three months after his initial kite, who diagnosed his ear infection and prescribed medical drops. (ECF No. 1, PageID.24 ¶ 12; ECF No.35, PageID.247, 256). According to Plaintiff, this delay in examination and treatment by a medical doctor caused his hearing loss. (ECF No. 35, PageID.256). He alleges violations of his Eighth Amendment right to be free of cruel and unusual punishment, Title II of the Americans with Disabilities Act ("ADA"), and Rehabilitation Act. (ECF No. 1, PageID.21).

The Michigan Department of Corrections (MDOC) Defendants[1] filed their Motion for Summary Judgment on February 8, 2023. (ECF No. 37). Plaintiff preemptively filed his response on February 7, 2023. (ECF No. 35). A few weeks later, the Court ordered Plaintiff to respond to MDOC Defendants' Motion for Summary

---

[1] The MDOC Defendants consist of Sirena Landfair, Brian Stricklin, Adria Roach, Alinda Florek, Joshua Czarniowski, and the MDOC.

Judgment.  (ECF No. 41).  Plaintiff submitted two separate responses to the order

explaining that he preemptively filed his response to MDOC Defendants' summary

judgment motion and prepared the response by anticipating their potential arguments.[2]

(ECF Nos. 43 and 45).  In his responses, he requested that the Court treat his

preemptively filed papers as the operative response.  (*See id.*).  Further, Plaintiff did not

seek an opportunity to provide supplemental briefing even after reviewing Defendants'

motion.  Shortly after Defendants filed their reply.  (ECF No. 46).  At Plaintiff's behest,

and in the absence of objection from the MDOC Defendants, the Court will treat his

preemptively filed papers as the operative response.  (ECF No. 43, 45 and 46).

### B.  Factual Background

On July 1, 2021, Plaintiff began experiencing pain which radiated from the right

side of his head, jaw, throat and neck.  (ECF No. 1, PageID.21; *see also* ECF No. 37-3,

PageID.733).  He was also experiencing ringing in his right ear, sensation of plugged

ears, sleeplessness due to pain in his head, ear, neck and throat, and significant hearing

loss.  (ECF No. 1, PageID.21; *see also* ECF No. 37-3, PageID.732, 734).

From July 3 to July 14, Plaintiff submitted multiple kites[3] notating the urgency of

his request and the severity of his pain by including the word "urgent" on the kite,

---

[2] Plaintiff explained that he filed his response before the MDOC Defendants filed their motion because he had a heavy workload consisting of pretrial motions and other requirements for another case with an upcoming trial that was set to begin on February 8, 2023.  (ECF No. 43, PageID.790; ECF No. 45, PageID.796).

[3] Plaintiff's July 6th and 8th kites were specifically directed to Dr. Victoria Hallett and Health Unit Manager (H.U.M) Sirena Landfair.  (ECF No. 1, PageID.21–22).  Plaintiff neither

3

selecting the "urgent" box on the kite form, including detailed language in the kite documenting the severity of his condition, or a combination of the three.  (ECF No. 1, PageID.21–22, 33, 37–39, 41–42; ECF No. 35, PageID.242).  On July 7, he and his aide, Khalil Chahine, requested Officer Mask contact Healthcare Services regarding his earache.  (*Id.* at PageID.22, 44; ECF No. 35, PageID.242; ECF No. 37-3, PageID.735).  After speaking with Health Services, Officer Mask informed Plaintiff that Nurse Roach said she would call him over to Health Services later in the day to be seen and assessed.  (ECF No. 1, PageID.22, 27; ECF No. 35, PageID.251).  This did not occur.  (ECF No. 1, PageID.27, at ¶ 7; ECF No. 35, PageID.252).  The next day, Plaintiff was called to Health Services but, despite hearing other nursing aides tell Nurse Roach that Plaintiff needed to be seen, he was returned to his cell without having been examined.  (ECF No. 1, PageID.22; ECF No. 35, PageID.252–53; ECF No. 37-3, PageID.736).  Plaintiff alleges the reason why Nurse Roach was unable to assess his ear infection on several occasions was due to the breaks she frequently took off the jail site.  (ECF No. 35, PageID.246).

Plaintiff filed a Step I grievance on July 8, 2021 and complained of the fact that he did not receive a response to the kites he filed earlier that month requesting to be

---

received a response to these kites nor was he called over to Health Services to be examined or assessed.  (*Id.*).  Plaintiff claims Defendant Landfair received the kites and ignored them as a form of retaliation.  (ECF No. 35, PageID.249, 253).  But provides no further facts to support this allegation. Defendant Landfair swears that she had no direct involvement in Plaintiff's medical care and treatment as it pertains to the ear infection at issue in the instant action.  (ECF No.37-5, PageID.757).

seen for his earache.  (ECF No. 1, PageID.32).  A few days later, Plaintiff received a

response[4] to his grievance which noted that the Electronic Medical Record system only

contained two Healthcare requests from Plaintiff, dated July 7, 2021 and July 11, 2021,

and that the "response to [his] Health care request was timely and answered

appropriately to [the] situation."  (*Id.* at PageID.34).  Further, the response stated that at

the time of the decision, Plaintiff had been seen by a medical provider for the issues

complained of and was actively being treated.  (*Id.*).

On July 11, Plaintiff received a response from Defendant Brian Stricklin to a kite

he submitted earlier that day, that stated a nurse visit had been scheduled.  (*Id.* at

PageID.22, 43; ECF No. 35, PageID.253; ECF No.37-6, PageID.762).  Plaintiff was

finally seen on July 14, 2021,[5] eleven days after his initial urgent kite request.  (ECF

No. 1, PageID.23, ¶ 9; ECF No. 37-3, PageID.737).  During the visit, Defendant

Czarniowski examined Plaintiff and noted that his ears contained significant earwax

buildup and he had a possible ear infection.  (ECF No. 35, PageID.255; ECF No. 37,

PageID.295; ECF No. 37-3, PageID.738).  Defendant Czarniowski provided Plaintiff

with mineral oil to administer into his ears.  (ECF No. 35, PageID.255; ECF No. 37,

PageID.295; ECF No. 37-3, PageID.738; ECF No.37-8, PageID.770).  The medical

---

[4] Plaintiff alleges he finally received a response to his kites nine days after his initial urgent kite.  (ECF No. 1, PageID.21, ¶ 3).

[5] While waiting for a response to his initial kite, Plaintiff experienced ongoing pain and hearing diminishment in his right ear.  (ECF No. 1, PageID.21).

notes also indicate Defendant Czarniowski did not observe redness or swelling in the ear, and that Plaintiff was still able to hear out of his right ear although his hearing had diminished.  (ECF No. 37-2, PageID.553).  Over a week later, Plaintiff was again sent to Health Services to have his ears irrigated and cleaned by Defendant Alinda Florek[6]. (ECF No. 1, PageID.23 ¶ 10).  During the visit, Plaintiff again emphasized the ongoing pain and discomfort he was experiencing along with hearing loss.  (*Id.*).  Shortly after this visit, Plaintiff received a response to his Step 2 grievance, dated August 31, 2021,

---

[6] The MDOC Defendants claim that Defendant Roach is the health care professional that flushed his ear.  (ECF No. 37, PageID.295; ECF No.37-7, PageID.765).  Whether Defendant Roach or Florek was the health care professional who examined and assessed Plaintiff's ears is not a genuine dispute of material fact sufficient to preclude summary judgment.  *See infra* at p.7–8; *see Thomas v. Allen*, 2015 WL 1245881, at *5 (E.D. Mich. Mar. 18, 2015) ("Conclusory statements unadorned with supporting fats are insufficient to establish a factual dispute that will defeat summary judgment."); *see also Walker v. Kilaru*, 2015 WL 898023, at *4 (E.D. Mich. Mar. 2, 2015). The crux of Plaintiff's complaint does not rest upon the fact that he was seen by Defendant Roach instead of Defendant Florek, but instead on the fact that the MDOC Defendants (i) did not provide "timely, effective, competent assessment and treatment" and (ii) failed to have him examined by a "licensed doctor."  (ECF No. 35, PageID.241, 248, 253) ("The sheer amount of attempts and discussions [with] defendants justified and demanded 'timely', immediate assessment and treatment by a licensed <u>Doctor</u>, not a nurse who could care a [sic] less about my physical, emotion, mental well-being.").  This point of contention is not material and thus insufficient to defeat MDOC Defendant's motion for summary judgment.

The medical notes from this visit indicate Defendant Roach was unable to visualize either of Plaintiff's eardrums due to a large build-up of impacted ear wax.  (ECF No. 37-2, PageID.547; ECF No. 37-3, PageID.73).  Defendant Roach then flushed Plaintiff's ears with peroxide and warm water.  (ECF No. 37, PageID.295; ECF No. 37-2, PageID.547; ECF No.37-7, PageID.765).  Following the flushing, Plaintiff's eardrums were visible and Defendant Roach noted neither was remarkable.  (ECF No. 37, PageID.296; ECF No. 37-2, PageID.547).

which noted that a nursing evaluation at an "earlier date" would have been preferable. (*Id.* at PageID.24 ¶ 11, PageID.35; ECF No. 35, PageID.242).

A few days later, Plaintiff was seen by Dr. Robert Lacy who noted he had inflammation behind his ear drum and prescribed medical ear drops to address the issue. (ECF No. 1, PageID.24 ¶ 12; ECF No.35, PageID.247, 256).  Plaintiff also requested a referral to see an audiologist to assess the damage to his right ear and hearing loss. (ECF No. 1, PageID.24 ¶ 12, PageID.36).  Plaintiff was finally examined by an audiologist on July 29, 2022, over a year after Plaintiff made his initial complaint of ear pain.  (ECF No. 35, PageID.242, 254, 262).  The audiologist noted Plaintiff suffered hearing loss in both ears and ascribed the cause of loss of hearing in his left ear to a history of being subjected to loud noises but the cause of the loss of hearing for the right ear is not indicated in the record.[7]  (*See generally* ECF No. 35, PageID.262–263).  The audiologist's notes also indicated that there is "family history of hearing loss." (ECF No. 35, PageID.262).  The audiologist noted that per MDOC guidelines, Plaintiff's PTA qualified him for bilateral Audicus hearing aids.  (ECF No. 35, PageID.263).  Plaintiff rated the level of hearing in his right ear as only slightly worse than the level of hearing in his left ear.  (ECF No. 37-3, PageID.734).

---

[7] The audiologist's notes indicate Plaintiff's Speech Reception Threshold (SRT) was obtained at 60 Decibels of Hearing Loss (dBHL) for his right ear and 50 dBHL for his left ear. (ECF No. 35, PageID.263).  These values fall within what qualifies as the "moderately severe" degree of hearing loss.  Degree of Hearing Loss, American Speech-Language-hearing Association, https://www.asha.org/public/hearing/degree-of-hearing-loss/.  Plaintiff's Pure Tone Average (PTA) was 58 DBHL for the right ear and 51 dBHL for the left ear.  (ECF No. 35, PageID.263).

Plaintiff requests injunctive and monetary relief.  (ECF No. 1, PageID.30).

## C.  Legal Standards

### a.  Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that would affect "the outcome of the suit under the governing law. . .."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact . . .."  *Id.* at 249–50, 255.  Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).  The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)).  Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact could find in its favor."  *Anderson*, 477 U.S. at 248.

### b.  Section 1983 Claim

To establish a claim under Section 1983, a plaintiff must "allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was

committed by a person acting under color of state law." *Solomon v. Golloday*, 2012 WL 2522493, at *2 (W.D. Mich. June 28, 2012) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).   The plaintiff must also demonstrate that the alleged perpetrator was personally involved in the activity that forms the basis of the complaint.  *Id.*

c.  **Eighth Amendment Violation Claim**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  Under the Eighth Amendment, prison authorities are obligated to provide medical care to prisoners. *Solomon*, 2012 WL 2522493 at *6 (citing *Estelle v. Gamble*, 429 U.S. 102, 103–04 (1976).  A failure to do so "would be inconsistent with contemporary standards of decency."  *Id.*  When a prison official is deliberately indifferent to the serious medical needs of a prisoner, they violate the prisoner's Eighth Amendment right.  *Id.*

To prove a claim that a prisoner's Eighth Amendment right has been violated, the prisoner must show that the official was deliberately indifferent to his or her serious medical needs.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  "A viable Eighth Amendment claim has both an objective and subjective prong, requiring the inmate to show that (1) he had an objectively serious medical need, and (2) 'an official knew of [his] serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably' to it."  *Est. of Miller v. Michigan Dep't of Corr.*, No. 22-10934, 2023 WL 122903, at *3 (E.D. Mich. Jan. 6, 2023); *see also Farmer*, 511 U.S. at 834. To satisfy the subjective component, the plaintiff must show that the prison official was both

"aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See id.* (citing *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).

### D. Analysis

#### a. Plaintiff Failed to Satisfy the Personal Involvement Prong of § 1983 as to Defendants Landfair, Stricklin, and Florek

##### i. Defendants Landfair and Stricklin

To state a viable § 1983 claim, Plaintiff must allege that (i) he was deprived of a right, privilege, or immunity secured by the Federal Constitution of the United States, and (ii) the deprivation was caused by a person while acting under color of state law. *Taylor v. U.S.*, 1996 WL 132192, at *1 (6th Cir. Mar. 21, 1996). Under § 1983, a party cannot be held liable "absent a *showing that the party personally participated in*, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutionally conduct." *Solomon,* 2012 WL 2522493, at *2 (emphasis added) (collecting cases); *see also Bennett v. Schroeder*, 99 F. App'x 707, 712–13 (6th Cir. 2004) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by [ ] each of the named defendants.").

Plaintiff's response to MDOC Defendants' arguments in regard to Defendants Landfair and Stricklin suffer from the same irremediable flaw – lack of allegations demonstrating the personal involvement of either defendant in Plaintiff's medical care in regard to his ear infection. (*See generally* ECF Nos. 1 and 35). According to

10

Plaintiff, Defendant Landfair's misdeeds comprised of her failure to respond to the kites Plaintiff addressed to her or to have him called over to Health Services for an assessment. (ECF No. 1, PageID.21–22). Plaintiff alleges that Defendant Landfair did not respond as a form of retaliation for another action he has filed against her. (ECF No. 35, PageID.249, 253). But he asserts nothing more. There are no allegations of (i) proactive steps taken by Defendant Landfair to prevent Plaintiff from being called to Health Services, (ii) measures undertaken by Defendant Landfair to prevent Plaintiff from receiving medical care, or (iii) statements made by Defendant Landfair that she received his kites but elected not to respond as a form of retaliation. The inclusion of nothing more than a conclusory statement that Defendant Landfair failed to respond to Plaintiff's kites as a form of retaliation, absent any supporting facts or evidence, is insufficient to support Plaintiff's § 1983 claim against her. *See Thomas*, 2015 WL 1245881, at *5 ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."); *see also Walker*, 2015 WL 898023, at *4.

Further, Plaintiff's own testimony and summary judgment response exculpates Defendant Landfair as it demonstrates she was not involved in the care he received (e.g., there was no recorded communication from Defendant Landfair to the nurses regarding his condition, no notations that Defendant Landfair was present during his healthcare visits, and no record or testimony that she examined Plaintiff). (ECF No. 37-3, PageID.739; *see also* ECF No. 37-5, PageID.757). Thus, I find that Plaintiff's

11

allegations against Defendant Landfair do not satisfy the personal involvement prong necessary to state a § 1983 claim.  *See Taylor*, 1996 WL 132192 at *1; *Gross v. Haute*, 2006 WL 3253245, at *3 (E.D. Mich. Nov. 8, 2006) (finding plaintiff's claim failed because he did not allege personal participation or involvement by a defendant with his medical problem).

Similarly, Plaintiff's pleadings and testimony show that Defendant Stricklin had no personal involvement in his medical care beyond the timely response he provided to Plaintiff's kite submission.  (ECF No. 1, PageID.22, 43; ECF No. 35, PageID.253; ECF No.37-2, PageID.622–23; ECF No.37-3, PageID.740; ECF No.37-6, PageID.762).  This action undertaken by Defendant Stricklin falls far below the threshold for the type of behavior that would be deemed sufficient to hold a party liable under § 1983.  *See Taylor*, 1996 WL 132192 at *1; *see also Gross*, 2006 WL 3253245 at *3.

Based on the record, I find that Plaintiff failed to proffer evidence to satisfy the personal involvement prong as to Defendants Landfair and Stricklin.  Thus, I recommend the MDOC Defendants' motion be **GRANTED** as to Defendants Landfair and Stricklin.

ii. **Defendant Florek**

Plaintiff claims that Defendant Florek irrigated his ears on July 22, 2021 and failed to exercise proper judgment by not requesting that a medical doctor evaluate his ears during the visit.  (ECF No. 35, PageID.241, 248; ECF No. 37-3, PageID.738).  The MDOC Defendants argue that Defendant Roach, not Defendant Florek, irrigated

Plaintiff's ears on July 22, 2021, and thus Defendant Florek had no personal involvement in Plaintiff's medical care.  (ECF No. 37, PageID.299).  To support their contention, the MDOC Defendants proffer (i) affidavits from Defendants Roach and Florek and (ii) Plaintiff's certified medical records.  (ECF No. 37-2; ECF No. 37-4, PageID.753; ECF No. 37-7, PageID.765).

When determining whether an issue of material fact exists, the Court takes the position of assuming the truth of the non-moving party's evidence and construing all reasonable inferences from that evidence in the light most favorable to them.  *See Indep. Order of Foresters v. Ellis-Batchelor*, 2021 WL 7448498, at *2 (E.D. Mich. Oct. 29, 2021); *see also Walker*, 2015 WL 898023 at *4.  However, "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *See Indep. Order of Foresters*, 2021 WL 7448498 at *2.

Yet again, Plaintiff asks this Court to rely upon nothing more than conclusory statements made in his response, affidavit, and made by him during his deposition to support his allegations against Defendant Florek.  Plaintiff relies on nothing more than his memory to challenge the MDOC Defendants' position that Defendant Roach, not Defendant Florek, irrigated his ears on July 22, 2021. (ECF No. 35, PageID.245, 256, 259; ECF No. 37-3, PageID.739).  In comparison, the MDOC Defendants have produced Plaintiff's certified medical record which shows that Defendant Roach, <u>not</u> Defendant Florek, administered the medical treatment (ECF No. 37-2, PageID.547) in addition to affidavits from both Defendant Florek and Defendant Roach (ECF No. 37-4

13

and ECF No. 37-7).  Plaintiff requests the Court to accept his mere say-so, in light of the contrary evidentiary record, that it was Defendant Florek who administered the treatment and thus should remain a party in the instant action.  Even when viewing the facts in the light most favorable to Plaintiff, without additional evidentiary support to shore up Plaintiff's contention, the Court cannot plausibly accept Plaintiff's contention. *See Searcy v. Macomb Cty. Jail*, 2016 WL 395952, at *1–2 (E.D. Mich. Jan. 14, 2016); *see also McCray v. Al-Saeedi*, 2015 WL 13741899, at *5 (E.D. Mich. July 31, 2015) (Plaintiff's "vague and unsubstantiated assertions . . . are insufficient to create a genuine issue of material fact. . ..."); *see also Davidson v. U.S.*, 6 F. App'x 317, 319 (6th Cir. 2001) (defendant's summary judgment motion granted as plaintiff's affidavit was not based on personal knowledge and plaintiff failed to proofer any other evidence on which a jury could reasonably find in his favor).

Based on the evidentiary record, and the absence of opposing evidence from Plaintiff, I find that Plaintiff has failed to create a genuine issue of material fact. Plaintiff has only presented conclusory statements to support the contention that Defendant Florek was involved in his medical care.  This is not enough to find that Defendant Florek was personally involved in Plaintiff's medical care and thus sustain a claim under § 1983 against her.  The undersigned finds that Plaintiff failed to proffer evidence to satisfy the personal involvement prong as to Defendant Florek and thus I recommend the MDOC Defendants' motion be **GRANTED** as to Defendant Florek.

14

### b. Plaintiff 's Allegations are Insufficient to Establish a Cognizable Eighth Amendment Claim Against the MDOC Defendants

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  And under the Eighth Amendment, prison authorities are obligated to provide medical care to prisoners. *Solomon*, 2012 WL 2522493, at *6 (citing *Estelle*, 429 U.S. at 103–04).  A failure to do so "would be inconsistent with contemporary standards of decency."  *Id.*  In instances where a prison official is deliberately indifferent to the serious medical needs of a prisoner, courts have found that this constitutes a violation of the prisoner's Eighth Amendment right.  *Id.*

A claim for the deprivation of adequate medical care contains two parts: an objective component and a subjective component.  *Id.*  To satisfy the objective component, a plaintiff "must allege that the medical need at issue is sufficiently serious."  *Id.*  This component may be met by (i) the "obviousness" standard which is satisfied in instances where "the seriousness of a prisoner's need [ ] for medical care is obvious even to a lay person", *id.* (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004)), or (ii) the effect of the delay in treatment, *Blackmore*, 390 F.3d at 897.  Cases involving the effect of delay in treatment also encompass decisions which involve prisoner claims for injury, loss or handicap due to delay in treatment. *Blackmore*, 390 F.3d at 897.  In these cases, a prisoner must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical

treatment to succeed." *Blackmore*, 390 F.3d at 898 (citing *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001)).  This requirement is specifically relevant to prisoner claims involving "minor maladies or non-obvious complaints of a serious need for medical care." *Id.* at 898.  In such instances, medical proof is necessary to assess whether the delay in fact caused a serious medical injury.  *Id.*  However, the Sixth Circuit has held that in instances where an injury is so obvious that a layperson would recognize the necessity for medical attention "the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Blackmore*, 390 F.3d at 899.  Instead, a demonstration that the prisoner experienced a need for medical treatment that was not addressed within a reasonable time is sufficient.  *Id.*

To satisfy the subjective component of a deprivation of adequate medical care, a plaintiff must show that prison officials had a "sufficiently culpable state of mind in denying medical care." *Solomon*, 2012 WL 2522493, at *6 (internal citations omitted). Here, deliberate indifference can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (citing *Farmer*, 511 U.S. at 837).

However, it is worth noting that not every claim by a prisoner that they have received inadequate medical treatment states a violation of the Eighth Amendment.  *Id.* (citing *Estelle*, 429 U.S. at 105).  Even in instances where a prisoner is misdiagnosed, placed on an inadequate treatment course, and unfortunately endures considerable

16

suffering, it may not be enough to state a claim for deliberate indifference.  *Id.* at *7
(citing *Gabehart v. Chapleau,* No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4,
1997)**)).**

### i.  Plaintiff has Failed to Satisfy the Objective Component of the Deliberate Indifference Test

The MDOC Defendants argue that Plaintiff is unable to establish the objective
component of his Eighth Amendment deliberate indifference claim as to Defendants
Czarniowski and Roach.  (ECF No. 37, PageID.303).  To satisfy the objective
component, Plaintiff must demonstrate that his medical needs were sufficiently severe
enough to be "obvious to even a layperson" that it required immediate medical
attention.  (ECF No. 37, PageID.304).  This test is often referred to as the "obviousness"
approach.  *Blackmore,* 390 F.3d at 897.  Plaintiff contends that his complaints of ear
pain, hearing loss, and other associated symptoms were sufficient to satisfy this claim.
(ECF No. 35, PageID.248).

In cases where courts have found that a plaintiff's condition satisfied the
obviousness standard there were typically obvious signs of a medical condition.  *See,
e.g., Taylor v. Franklin Cty.*, 104 F. App'x 531, 538 (6th Cir. 2004) ("obvious signs of
reoccurring incontinence and debilitating immobility were clear symptoms of a serious
problem"); *see also Blackmore,* 390 F.3d at 897 (plaintiff exhibits "obvious
manifestations of pain and injury" including vomiting which the court deemed to be a
"clear manifestation of internal physical disorder").  Unlike in *Taylor* and *Blackmore*,

the symptoms complained of by Plaintiff (i.e., sensation of "plugged" ears, hearing loss, and pain radiating from the right side of his head, jaw, throat and neck) in this action did not produce physical manifestations readily visible to other individuals and thus would "not be so obvious that a lay person would recognize it." *See Alexander v. Jones*, 2000 WL 1562841, at *1 (6th Cir. 2000) (plaintiff "failed to establish that defendants knew of, but disregarded, a substantial risk to his health" as his condition was "not so obvious that a lay person would recognize it"). Further, others did not observe Plaintiff suffering from the symptoms associated with ear infections which would typically produce physical manifestations (e.g., redness or swollen jaw).[8] (ECF No. 37, PageID.304; ECF No. 37-2, PageID.553, 547); *see also Mitchell v. Cty. of Ottawa*, 2010 WL 3430790, at *1–2 (plaintiff who was suffering from ear infection had visible symptoms of swollen eye, moderate to severe discharge, visible pus, and swollen jaw). In the instant action, the record does not support Plaintiff's contention that his condition was so obvious that even a lay person would have known.

Because Plaintiff's condition was not obvious, and because he challenges the adequacy and timeliness of his treatment, he is obligated to proffer verifying medical evidence. *Napier,* 238 F.3d at 742; *see also Blackmore*, 390 F.3d at 898. Under this

---

[8] Plaintiff testified that at one point when he looked in the mirror, he observed that his cheek was swollen. (ECF No. 37-3, PageID.733). However, there are no other indications in the record that Plaintiff experienced physical manifestations of his ear infection. Notably, his complaint, response to Defendant MDOC's summary judgment motion, and kite requests are devoid of references to physical manifestations of his ear infection. (ECF No.37-3, PageID.734).

18

standard, Plaintiff is required to proffer evidence that the delay in treatment caused a serious medical injury. *Id.* The only evidence proffered by Plaintiff are a set of progress notes prepared by Alison Gilbert, an audiologist. (ECF No. 35, PageID.262-63). While the notes reflect a diminishment of hearing in Plaintiff's right ear and a recommendation for bilateral Audicus hearing aids there is no mention of the cause for Plaintiff's hearing loss. (ECF No. 35, PageID.262). The notes do contain a hypothesis as to the cause for Plaintiff's hearing loss in his left ear, there is no mention for the cause of hearing loss in his right ear. (ECF No. 35, PageID.262); *see Basat v. Caruso*, 2008 WL 4457828, at *8 (E.D. Mich. Sept. 30, 2008) (plaintiff reviewed his medical file and located a letter which stated he had hearing loss from an ear infection). Lastly, during his deposition Plaintiff testified that to date he has not retained an expert witness to attest to his condition or the cause. (ECF No. 37-3, PageID.733 ("Yes. I don't have an expert that I've hired, no.")). Plaintiff has failed to present verifying medical evidence that the delay in treating his ear infection caused the hearing loss in his right ear.

Based on the above, the undersigned finds that Plaintiff failed to satisfy the objective prong as to his deliberate indifference claim.

### i.    Plaintiff has Failed to Satisfy the Subjective Component of the Deliberate Indifference Test

As to the subjective component, the MDOC Defendants argue Plaintiff was required to show that the prison officials, specifically Defendants Czarniowski and

Roach, were subjectively aware of his condition and disregarded that risk by failing to take reasonable measures to address or resolve it. (ECF No. 37, PageID.308). Plaintiff contends that the language in his kites and complaints regarding his condition during his visits to the Health Center were sufficient to alert Defendants Czarniowski and Roach of the severity of his condition. (ECF No. 35, PageID.246, 253, 255-56).

The evidentiary record does not support Plaintiff's contention. Defendant Czarniowski's notes show that he did not observe Plaintiff to be suffering from a serious medical condition when he visited the health center on July 14, 2021. (ECF No.37-2, PageID.553; ECF No.37-3, PageID.770). His notes show there was no indication of redness or swelling in Plaintiff's right ear and that while Plaintiff's hearing diminished in his right ear, he was still able to hear. (ECF No.37-2, PageID.553). Defendant Roach's medical notes show that during his visit she irrigated Plaintiff's ear, and the procedure was well tolerated. (ECF No.37-2, PageID.547). Last, while the response to Plaintiff's Step 2 grievance noted that a nursing evaluation at an "earlier date" would have been preferable, this does not demonstrate that either Defendants Czarniowski or Roach disregarded any risk by not addressing Plaintiff's medical condition at an earlier date. The record demonstrates that neither Defendant Czarniowski nor Roach were "wantonly indifferent to Plaintiff's serious medical needs. *See Pounds v. Corr. Med. Serv., Inc.*, 2007 WL 107764, at *4 (E.D. Mich. Jan. 9, 2007) (despite plaintiff's displeasure with the treatment he received for his earache "the record demonstrates that health care personnel were at all times responsive to his medical condition").

20

Further, the Sixth Circuit has held that in instances, such as this, where a "prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see also Solomon*, 2012 WL 2522493 at *7 (collecting cases supporting the proposition that where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").   Further, a difference in opinion between the prisoner and healthcare professional as to the appropriate course of medical treatment is not sufficient to state a deliberate indifference claim.  *Solomon*, 2012 WL 2522493 at *6; *see also Walker*, 2015 WL 898023 at *5 (a showing of negligence or misdiagnosis of an ailment is not sufficient to allege deliberate indifference).

Based on the above, the undersigned finds that Plaintiff failed to satisfy the subjective prong as to either Defendant Czarniowski or Roach.

### c.  **Plaintiff's ADA & Rehabilitation Act Claims are Unsupported**

The American with Disabilities Act, 42 U.S.C.§ 12131, et seq. (ADA) prohibits public entities from discriminating against a qualified individual with a disability because of said disability.  *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  The ADA applies to both state and local government entities, including prison and county jail facilities.  *Yeskey*, 524 U.S. at 210.  The proper defendant to a suit under

21

the ADA is the public entity or an official acting in his or her official capacity.  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).  To state a claim under Title II of the ADA, a plaintiff must establish: (1) that they are a qualified individual with a disability; (2) that they were excluded from participation in or were denied the benefits of the services, programs, or activities of a public entity; and (3) that such discrimination was because of their disability.  42 U.S.C. § 12132.  "Disability" is defined as "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Similarly, the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), (Rehabilitation Act), provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

### i.   **Defendants May Not Be Sued Under the ADA or Rehabilitation Act in their Individual Capacities**

The MDOC Defendants argue Plaintiff does not have a cognizable claim under the ADA or the Rehabilitation Act against the MDOC Defendants in their individual capacities.  The Court agrees with the argument.  Neither the ADA nor the Rehabilitation Act permit claims to be brought against defendants in their individual capacities.  *See Sedore v. Wyckoff, et al.*, 2022 WL 141526, at *2 (E.D. Mich. Jan. 14,

22

2022); *see also Basat*, 2008 WL 4457828, at *15 (individual defendants cannot be held liable under the ADA); *see Hiler v. Brown*, 177 F.2d 542, 546 (6th Cir. 1999) (the Rehabilitation Act does not impose personal liability upon individuals).  Thus, the undersigned recommends the ADA claims against Defendants Czarniowski and Stricklin[9], in their individual capacities, be DISMISSED.

### ii.   **Official Capacity**

The MDOC Defendants argue that Plaintiff has failed to make a prima facie showing of discrimination in violation of the ADA as he has not (i) demonstrated he has a qualifying disability (i.e., ear wax buildup) under the ADA or RA and (ii) did not receive timely treatment.  (ECF No. 37, PageID.311–312).

Despite MDOC Defendants' representations in their brief, the injury complained of is not ear wax buildup (ECF No. 37, PageID.311, 313), it is hearing loss associated with an alleged delay of treatment of what was ultimately diagnosed as an ear infection (ECF No. 1, PageID.21; ECF No. 35, PageID.248; *see also* ECF No. 37-3, PageID.732, 741, 734).  Under the ADA, hearing loss constitutes a disability within the meaning of the Act.  *See* ADA Requirements: Effective Communication, ADA Requirements: Effective Communication (Feb. 28, 2020), https://www.ada.gov/resources/effective-

---

[9] The MDOC Defendants argue that the defendants may not be sued under the ADA or Rehabilitation Act in their individual capacities.  (ECF No. 37, PageID.309–10). It is not necessary for the Court to address this argument as it pertains to Defendants Roach, Florek, or Landfair as the Court previously dismissed Plaintiff's ADA and Rehabilitation Act claims against these individuals, in their individual capacities, in its January 14, 2022 Opinion and Order of Partial Dismissal.  (ECF No. 4, PageID.56).

communication/.  The medical records show that Plaintiff has suffered from hearing loss

in his right ear.  (ECF No. 35, PageID.262–63; ECF No. 37-2, PageID.345).  Thus, the

undersigned finds that Plaintiff has satisfied this requirement.

The MDOC Defendants argue that Plaintiff's complaint in regard to the ADA and

Rehabilitation Act claim is that he did not receive "timely medical treatment" based on

the following deposition testimony:

> Q. Okay. Were you denied the ability to participate in
> programs because of your claimed disability?
> A. I don't participate in any activities except for laying on my
> bed, sir.  I'm in pain all the time.
> Q. All right.  Were you denied the ability to participate in
> programs because of your alleged disability?
> A. I wasn't in no - - nothing like that.
> Q. I'm sorry.  I couldn't hear you.
> A. I wasn't in no programs.
> Q. All right.  So I guess in sum, your ADA claim regards the
> delayed medical treatment, as far as your ability to obtain
> hearing aids; would that be correct?
> A. Yeah.

(ECF No. 37, PageID.311; ECF No. 37-3, PageID.741).  However, the record must be

reviewed in its entirety, and in the light most favorable to the nonmoving party, before a

finding can be made as to whether Plaintiff states a cognizable claim under the ADA

and Rehabilitation Act.  *See Walker,* 2015 WL 898023 at *4 ("The Court need only

consider the cited materials, but it may consider other evidence in the record.").  When

reviewed in its entirety, the record shows that Plaintiff is not just challenging the

inadequacy of his medical treatment under the ADA and Rehabilitation Act, which is an

unactionable claim[10] under these respective acts but is also claiming an inability to participate in certain activities and programs at the jail.  (ECF No. 35, PageID.243).  Although, Plaintiff's initial complaint did not specify which programs he was unable to participate in, construing the moving papers and evidence in favor of the non-movant (i.e., Plaintiff) as the Court is required to do, *Walker,* 2015 WL 898023 at *4, his response[11] delineates the programs he alleges he was unable to participate in due to his hearing loss (i.e., Alcoholics Anonymous meetings, substance abuse classes, law library, interactions with his assigned geriatric aid, and telephonically communicating with his family on a daily basis). (ECF No. 35, PageID.243).  Thus, *Stevenson*, 2008 WL 5085145, at *3 is not on point.  The MDOC Defendants also cite *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007 (N.D. Ohio 2004) and *Kensu v. Rapelje*, 2015 WL 5302816, at *4 (E.D. Mich. Sept. 10, 2015) to support their position that Plaintiff does not have an actionable claim under either the ADA or Rehabilitation Act.  Neither case is on point as, again, in addition to inadequate medical treatment Plaintiff alleges an inability to participate in certain activities and programs at the jail.  (ECF No. 35, PageID.243).

---

[10] *Stevenson v. Pramstaller*, 2008 WL 5085145, at *3 (E.D. Mich. Oct. 2, 2008).

[11] Although Plaintiff preemptively filed his response, it is appropriate for the undersigned to take the arguments regarding his ADA and Rehabilitation Act claim into consideration as the MDOC Defendants did not challenge the early submission of his response and elected not to address the arguments again in their reply.  *See supra* p. 2–3.

Despite Plaintiff's failure to identify the programs he was allegedly excluded from participating in due to his hearing impairment during his deposition, he identified the programs in his response.  However, the information in Plaintiff's response is insufficient to support his claim under the ADA or the Rehabilitation Act as Plaintiff has not included an allegation or argument that MDOC "denied him the opportunity to participate in or the benefit of [those] services due to his disability."  (ECF No. 37, PageID.314).  Plaintiff argues in his briefing that he has not been able to participate in certain programs, but he does not argue that he has in fact been excluded.  (ECF No. 35, PageID.243; ECF No. 37-2, PageID.741).  Instead, he explained that he does not participate in the any programs because he is "in pain all the time."  (ECF No. 37-2, PageID.714).  Not because MDOC officials are prohibiting him from doing so.  This allegation is insufficient to satisfy or establish a claim under either the ADA or Rehabilitation Act.  *See also Keller v. Chippewa Cty.*, *Michigan Bd. Of Commissioners*, 860 F. App'x 381, 388 (6th Cir. 2021) (plaintiff failed to create a genuine issue of material fact as he failed to offer evidence, aside from his testimony, that the County would have denied him meaningful access to activities, programs, and services).

Plaintiff has not established how he has been denied by the MDOC Defendants the ability to participate in certain programs and services.  This claim is further weakened as he was prescribed and to date has received his hearing aids.  (ECF No. 35, PageID.273; ECF No. 37-2, PageID.741).  Based on the record, Plaintiff has not been excluded from participating due to his disability but instead has elected not to

participate.  *See Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 492–93 (6th Cir. 2004)

(plaintiff failed to state a claim under either the ADA or the Rehabilitation Act as "his

complaint contained no allegations that the defendants discriminated against him solely

because of his alleged handicap").

### d. **Qualified Immunity**

Qualified immunity is an affirmative defense that extends to government officials

performing discretionary functions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 817–18

(1982).  Under this exception, government officials are immune from civil liability

when acting in an official capacity if their actions do not violate "clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Id.*

at 818.  This court applies a two-part test to determine whether a government official is

entitled to the defense of qualified immunity: (1) whether the plaintiff has shown a

violation of a constitutionally protected right; and if so, (2) whether that right was

clearly established such that a reasonable official would have understood that his

behavior violated that right.  *See Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir.

1998).

The MDOC Defendants argue that the individual MDOC defendants are entitled

to qualified immunity as Plaintiff has failed to demonstrate that the individual

defendants have violated any clearly established constitutional right.  (ECF No. 37,

PageID.316).  The undersigned finds that based on the analysis conducted above

Plaintiff has failed to make a showing that the MDOC Defendants have violated a clearly established constitutional right.

### D. Conclusion

For these reasons, **I RECOMMEND** that this Court **GRANT** MDOC Defendants' motion for summary judgment (ECF No. 37) and **DISMISS** Plaintiff's claims in their entirety.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 17, 2023                    s/ PATRICIA T. MORRIS
                                      Patricia T. Morris
                                      United States Magistrate Judge